**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

Deborah Rice,

     Plaintiff,                    CASE NO. 5:21-cv-00135-MW/MJF

v.

AZIYO BIOLOGICS, INC.,
MEDTRONIC SOFAMOR DANEK
USA, INC., SPINALGRAFT
TECHNOLOGIES, LLC, DCI
DONOR SERVICES, INC., NEW
MEXICO DONOR SERVICES, and
VRL-EUROFINS,

     Defendants.

_____/

**DEFENDANTS MEDTRONIC SOFAMOR DANEK USA, INC.
AND SPINALGRAFT TECHNOLOGIES, LLC'S
ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Medtronic Sofamor Danek USA, Inc. ("MSD") and Spinalgraft

Technologies, LLC ("SGT") (collectively "Medtronic[1]"), by and through counsel,

hereby respond to Plaintiff's First Amended Complaint as follows[2]:

_____

[1] "Medtronic" as used by Defendants in this Answer refers exclusively to named
defendants Medtronic Sofamor Danek USA, Inc. and SpinalGraft Technologies,
LLC and does not include any other entity.

[2] Any allegation that is not specifically admitted is denied.

## RESPONSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1.      This action seeks to recover damages for the personal injuries suffered by DEBORAH RICE, which were the direct and proximate result of the wrongful conduct of AZIYO BIOLOGICS, INC., MEDTRONIC SOFAMOR DANEK USA, INC., SPINALGRAFT TECHNOLOGIES, LLC, DCI DONOR SERVICES, NEW MEXICO DONOR SERVICES and VRL-EUROFINS in connection with the procurement, research, testing, design, development, manufacture, production, inspection, labeling, advertisement, marketing, promotion, sale, and distribution of FiberCel Fiber Viable Bone Matrix ("FiberCel") and its components.

**ANSWER:** The allegations contained in Paragraph 1 of Plaintiff's First Amended Complaint purport to describe the action and state conclusions of law to which no response is required. To the extent a response is required, Medtronic denies that Plaintiff is entitled to this or any other relief.

2.      Plaintiff DEBORAH RICE ("Plaintiff") is and at all relevant times was, a resident of the State of Florida, residing in Panama City Beach, Florida.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 2 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

3.      Defendant Aziyo Biologics, Inc. ("Aziyo") is a Delaware corporation, whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Aziyo's principal place of business is located at 12510 Prosperity Drive, Suite 370, Silver Springs, Maryland 20904. Aziyo does business throughout the United States, including conducting regular business in Florida.

**ANSWER:** The allegations contained in Paragraph 3 are not directed toward Medtronic and therefore require no response. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the

truth of the allegations contained in Paragraph 3 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

4.      Aziyo sells a variety of medical products, including implantable electronic devices, orthopedic and spinal repair products, and soft tissue reconstruction products.

**ANSWER:** The allegations contained in Paragraph 4 are not directed toward Medtronic and therefore require no response.  To the extent a response is required, Medtronic states that Aziyo is the manufacturer of FiberCel.  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

5.      Upon information and belief, Aziyo developed, manufactured, marketed, promoted, distributed, supplied and/or sold FiberCel which was implanted into Plaintiff, and which is the subject of this complaint.

**ANSWER:** The allegations contained in Paragraph 5 are not directed toward Medtronic and therefore require no response.  To the extent a response is required, Medtronic admits that Aziyo is the manufacturer of FiberCel.  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

6.      Defendant MEDTRONIC SOFAMOR DANEK, INC., is incorporated in Tennessee, having its principal place of business at 2600 Sofamor Danek Drive, Memphis, TN 38132 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

MEDTRONIC SOFAMOR DANEK, INC., does business throughout the United States, including conducting regular business in Florida.

**ANSWER:** Medtronic admits the allegations contained in Paragraph 6 of Plaintiff's First Amended Complaint.

7.      Defendant SPINALGRAFT TECHNOLOGIES, LLC is incorporated in Tennessee, having its principal place of business at 4340 Swinnea Road, Memphis, TN 38118 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. SPINALGRAFT TECHNOLOGIES, LLC does business throughout the United States, including conducting regular business in Florida.

**ANSWER:** Medtronic admits the allegations contained in Paragraph 7 of Plaintiff's First Amended Complaint.

8.      MEDTRONIC SOFAMOR DANEK USA, INC. and SPINALGRAFT TECHNOLOGIES, LLC (collectively, "Medtronic") develop therapeutic and diagnostic medical products, and are among the world's largest medical technology, services, and solutions companies.

**ANSWER:** To the extent Paragraph 8 quotes from Medtronic Inc.'s website, the website speaks for itself, and any attempt to characterize it or selectively quote portions of it out of context is denied. Medtronic denies any remaining allegations contained in Paragraph 8 of Plaintiff's First Amended Complaint.

9.      Upon information and belief, Medtronic was designated as the exclusive U.S. distributor of the FiberCel manufactured by Defendant Aziyo.

**ANSWER:** Medtronic admits that Aziyo manufactures FiberCel and that SGT, which is a wholly owned subsidiary of MSD, is the exclusive distributor of FiberCel in the United States. Medtronic denies the remaining allegations in Paragraph 9.

10.     At all times relevant, Medtronic distributed, supplied and/or sold FiberCel, which was implanted into Plaintiff, and which is the subject of this Complaint.

**ANSWER:** Medtronic admits only that SGT, which is a wholly-owned subsidiary of MSD, distributed FiberCel to certain customers in Florida and that Aziyo "drop shipped" any orders directly to those customers. Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 10 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

11.     Defendant DCI DONOR SERVICES, INC. is incorporated in Tennessee, having its principal place of business at 566 Mainstream Drive, Suite 300, Nashville, TN 37228 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. DCI DONOR SERVICES, INC. is the parent company of NEW MEXICO DONOR SERVICES. DCI DONOR SERVICES does business throughout the United States, including conducting regular business in Florida.

**ANSWER:** The allegations contained in Paragraph 11 are not directed toward Medtronic and therefore require no response. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 11 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

12.     Defendant NEW MEXICO DONOR SERVICES is incorporated in New Mexico, having its principal place of business at 1609 University Boulevard NE, Albuquerque, NM 87102 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

NEW MEXICO DONOR SERVICES does business throughout the United States, including conducting regular business in Florida.

**ANSWER:** The allegations contained in Paragraph 12 are not directed toward Medtronic and therefore require no response. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 12 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

13. DCI DONOR SERVICES, INC. and NEW MEXICO DONOR SERVICES (collectively, "Donor Services") are engaged in the business of, inter alia, locating, properly identifying and qualifying parts of human cadavers that should at all times qualify for processing, distribution and ultimately for use in a wide variety of surgical procedures where human bone tissue, etcetera, can be appropriately and safely utilized.

**ANSWER:** The allegations contained in Paragraph 13 are not directed toward Medtronic and therefore require no response. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 13 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

14. Defendant VRL-EUROFINS is incorporated in Colorado, having its principal place of business at 6933 South Revere Parkway, Centennial, CO 80112 USA with a registered agent for service located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. VRL-EUROFINS does business throughout the United States, including conducting regular business in Florida.

**ANSWER:** The allegations contained in Paragraph 14 are not directed toward Medtronic and therefore require no response. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

15. VRL-EUROFINS is a corporation engaged in the regular business of testing, and laboratory services for multiple purposes including analytical services, genomic discovery, pharmacology, forensics, clinical studies and donor cadaver blood, bone, and tissue analysis.

**ANSWER:** The allegations contained in Paragraph 15 are not directed toward Medtronic and therefore require no response. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 15 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

16. Defendants, at all times relevant to this lawsuit, manufactured, developed, designed, tested, marketed, distributed, promoted, supplied and/or otherwise sold (directly or indirectly) FiberCel to various locations for use in surgeries requiring bone grafting, including to Ascension Sacred Heart Hospital, where contaminated FiberCel was surgically implanted into Plaintiff Deborah Rice, causing her to suffer harm as described herein.

**ANSWER:** Medtronic admits only that SGT, which is a wholly owned subsidiary of MSD, distributed FiberCel to certain customers in Florida and that Aziyo "drop shipped" any orders directly to those customers . Medtronic denies the remaining allegations in Paragraph 16 as to Medtronic. Medtronic is without

sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 16 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

17.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because complete diversity exists between the parties.

**ANSWER:**  The allegations contained in Paragraph 17 call for a legal conclusion to which no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 17 of Plaintiff's First Amended Complaint as to Medtronic.

18.     At all times relevant to this action, the Defendants have been engaged, either directly or indirectly, in the business of manufacturing, testing, marketing, selling, and/or distributing FiberCel within the State of Florida, with a reasonable expectation that the product would be used in this state, and thus regularly solicited or transacted business in this state.

**ANSWER**:  Medtronic admits only that SGT, which is a wholly owned subsidiary of MSD, distributed FiberCel to certain customers in Florida and that Aziyo "drop shipped" any orders directly to those customers.  Medtronic denies the remaining allegations in Paragraph 18 as to Medtronic.  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 18 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

19.     Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. In addition, the Defendants regularly conduct business in this district.

**ANSWER:**  The allegations contained in Paragraph 19 call for a legal conclusion to which no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 19 of Plaintiff's First Amended Complaint as to Medtronic.

20.     FiberCel Fiber Viable Bone Matrix ("FiberCel") is made from human tissue consisting of cancellous bone particles with preserved cells, combined with demineralized cortical fiber. The human tissue donor product involved in this case was harvested by Defendants DCI Donor Services, Inc and New Mexico Donor Services and tested by Defendant VRL-Eurofins. It is engineered to be like natural tissue and is used as a bone void filler in various orthopedic and spinal procedures. The allografts contain the scaffold, growth factors and cells required for regeneration critical for successful bone formation.

**ANSWER:**  Medtronic admits that FiberCel is a human tissue allograft consisting of cryopreserved cancellous and corticocancellous bone matrix that is aseptically processed to preserve native factors that support bone repair.  Medtronic also admits that FiberCel can be used in orthopedic or reconstructive bone grafting procedures in combination with autologous bone or other forms of allograft bone, or alone as a bone graft.  To the extent Plaintiff is quoting from a document, that document speaks for itself, and any attempt to characterize it or selectively quote portions of it out of context is denied.  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in

Paragraph 20 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

21.     FiberCel is marketed for use in orthopedic and reconstructive bone grafting procedures with the use of autologous bone or other forms of allograft bone or alone as a bone graft. FiberCel is made with donor tissue and growth factor cells.

**ANSWER:** Medtronic admits that FiberCel is a human tissue allograft consisting of cryopreserved cancellous and corticocancellous bone matrix that is aseptically processed to preserve native factors that support bone repair. Medtronic also admits that FiberCel can be used in orthopedic or reconstructive bone grafting procedures in combination with autologous bone or other forms of allograft bone, or alone as a bone graft. To the extent Plaintiff is quoting from a document, that document speaks for itself, and any attempt to characterize it or selectively quote portions of it out of context is denied.

22.     On June 20, 2019, Aziyo announced it had signed an exclusive, multi-year distribution agreement with Defendant Medtronic in the U.S. orthopedic market. According to the agreement, Aziyo agreed to manufacture and supply FiberCel to Medtronic for distribution through the company's sales and marketing organization.

**ANSWER:** To the extent Paragraph 22 references documents, those documents speak for themselves, and any attempt to characterize them or selectively quote portions of them out of context are denied. Medtronic denies any remaining allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint.

23.     On June 2, 2021, the United States Food & Drug Administration (FDA) issued an urgent voluntary recall of FiberCel, specifically three products from Donor Lot Number NMDS210011: VMB9901, VBM9905, and VBM9910.

**ANSWER:** Medtronic admits that it is aware that Aziyo voluntarily recalled donor lot NMDS210011 FiberCel Fiber Viable Bone Matrix, Product Numbers VBM9901, VBM9905, and VBM9910 on June 2, 2021.  To the extent Plaintiff is quoting from a document, that document speaks for itself, and any attempt to characterize it or selectively quote portions of it out of context is denied.

24.     Aziyo initiated the voluntary recall in response to reports of patients testing positive for Tuberculosis and post-surgical infections following the surgical implantation of FiberCel as part of an orthopedic or spinal procedure.

**ANSWER:** The allegations contained in Paragraph 24 are not directed toward Medtronic and therefore require no response.  To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

25.     Tuberculosis ("TB") is an infectious disease caused by bacteria known as Mycobacterium tuberculosis.  TB is highly contagious, and mostly impacts the lungs, but can also spread through the lymph nodes to other parts of the body, including the kidneys, brain, and spine.

**ANSWER:** The allegations in Paragraph 25 are not directed to Medtronic and therefore require no response.  To the extent a response is required, Medtronic denies that Paragraph 25 accurately characterizes the disease state at issue in this case; Medtronic therefore denies the allegations.

26.     Once mycobacterium tuberculosis is introduced to the body, the bacteria must then proliferate within the new host for the host to develop disease. When this bacterium is introduced in a surgical wound, the patient is already in an immunocompromised position, causing them to have an increased likelihood of developing TB, which can be fatal.

**ANSWER:**  The allegations in Paragraph 26 are not directed to Medtronic and therefore require no response.  To the extent a response is required, Medtronic denies that Paragraph 26 accurately characterizes the disease state at issue in this case; Medtronic therefore denies the allegations.

27.     Aziyo recalled 154 units of the TB contaminated FiberCel delivered to multiple states.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

28.     Defendant Aziyo has acknowledged many post-surgical infections. Many patients that have received FiberCel from this Donor Lot have tested positive for Tuberculosis, including Plaintiff.

**ANSWER:**  The allegations in Paragraph 28 are not directed toward Medtronic and therefore require no response.  To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 28 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

29.     This recall acknowledged that viruses and bacteria, including Tuberculosis, can be transplanted into patients along with the FiberCel product.

**ANSWER:** To the extent Paragraph 29 references a document, the document speaks for itself, and any attempt to characterize it or selectively quote portions of it out of context is denied. Medtronic denies any remaining allegations contained in Paragraph 29 of Plaintiff's First Amended Complaint as to Medtronic.

30.     Plaintiff Deborah Rice underwent spinal surgery on March 29, 2021, at Ascension Sacred Heart Hospital in Miramar Beach, Florida.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

31.     Plaintiff Deborah Rice's surgery included bone grafting, utilizing FiberCel from Donor Lot Number NMDS210011.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 31 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

32.     Unbeknownst to Plaintiff or her physicians at the time of her surgery, the FiberCel implanted into Plaintiff was contaminated with tuberculosis.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 32 of Plaintiff's Frist Amended Complaint; therefore, Medtronic denies those allegation as to Medtronic.

33.     On June 8, 2021, Plaintiff's physicians notified Plaintiff she may have been exposed to TB. Plaintiff subsequently tested positive for TB.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 33 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

34. Plaintiff's tuberculosis was caused by the contaminated and recalled FiberCel used in her operation.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 34 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

35. As a direct and proximate result of the implantation of contaminated FiberCel, Plaintiff is forced to undergo a grueling medical protocol to manage her TB diagnosis.

**ANSWER:** To the extent Paragraph 35 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 35 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

36. Plaintiff will require continued medical monitoring now and into the future in order to monitor Plaintiff's health related to the ongoing and serious nature of her tuberculosis diagnosis.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations concerning Plaintiff's alleged injuries.

Therefore, Medtronic denies the allegations contained in Paragraph 36 of Plaintiff's First Amended Complaint.

37.     Plaintiff would not have suffered from tuberculosis had Defendants sold and distributed a product that was free from tuberculosis contamination.

**ANSWER:** Medtronic admits only that SGT is the distributor of FiberCel. Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations concerning Plaintiff's alleged injuries. Medtronic denies the remaining allegations in Paragraph 37 as to Medtronic.

38.     Plaintiff further has experienced significant side effects from the extensive treatments causing a cascade of sequential complications caused by the contaminated FiberCel product.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations concerning Plaintiff's alleged injuries. Therefore, Medtronic denies the allegations contained in Paragraph 38 of Plaintiff's First Amended Complaint.

39.     As a direct and proximate result of Plaintiff's exposure to Defendants' contaminated FiberCel product used in her spinal surgery, Plaintiff has suffered and continues to suffer from severe pain and discomfort, emotional distress, the loss of daily functions, and economic loss, including, but not limited to, present and future medical expenses, lost earnings, and future lost earning capacity, all of which are a direct result of Defendants' liability producing conduct.

**ANSWER:** To the extent paragraph 39 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations

contained in Paragraph 39 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations as to Medtronic.

## RESPONSE TO PLAINTIFF'S CAUSES OF ACTION

## RESPONSE TO FIRST CAUSE OF ACTION – STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT – AGAINST AZIYO, MEDTRONIC, AND DONOR SERVICES

40.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER:**   Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

41.     At all times herein mentioned, Defendants designed, manufactured, tested, marketed, sold, and distributed into the stream of commerce the aforementioned FiberCel.

**ANSWER:**   To the extent the allegations in Paragraph 41 call for a legal conclusion, no response in is required.  To the extent a response is required, Medtronic admits only that SGT, which is a wholly owned subsidiary of MSD, distributed FiberCel to certain customers in Florida and that Aziyo "drop shipped" any orders directly to those customers.  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 41 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

42.     In June 2021, Defendants recalled FiberCel from Donor Lot Number NMDS210011, which was contaminated with TB.

**ANSWER:** Medtronic admits that it is aware Aziyo voluntarily recalled donor lot NMDS210011 FiberCel Fiber Viable Bone Matrix, Product Numbers VBM9901, VBM9905, and VBM9910 on June 2, 2021. Medtronic denies the remaining allegations contained in Paragraph 42 of Plaintiff's First Amended Complaint as to Medtronic.

43.     Defendants' quality control should have, but failed to, discover that the aforementioned FiberCel Donor lot was contaminated.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 43 of Plaintiff's First Amended Complaint as to Medtronic.

44.     At all times herein mentioned, the aforementioned FiberCel was defective in its manufacture in that the FiberCel units were contaminated with TB, which in turn transplanted the serious and potentially deadly illness to patients, including Plaintiff, who was implanted with the contaminated FiberCel.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 44 of Plaintiff's First Amended Complaint as to Medtronic.

45.     The FiberCel units manufactured by Defendants and implanted into Plaintiff were unsafe, defective, and unreasonably dangerous before they left Defendants' possession, and were in the same condition when implanted into Plaintiff as when placed into the stream of commerce by Defendants.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 45 of Plaintiff's First Amended Complaint as to Medtronic.

46.     Defendants knew or should have known, based on the industry and scientific knowledge available at the time of their manufacture and distribution, that

FiberCel contaminated with TB was defective, unsafe, and unreasonably dangerous to FiberCel users, including Plaintiff.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 46 of Plaintiff's First Amended Complaint as to Medtronic.

47. At all times herein mentioned, ordinary consumers, including Plaintiff, who was implanted with FiberCel, could not and would not have recognized the potential defects, risks, and dangers of contaminated FiberCel units.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 47 of Plaintiff's First Amended Complaint as to Medtronic.

48. At all times herein mentioned, the aforementioned FiberCel was implanted into Plaintiff in a manner which was reasonably foreseeable to the Defendants.

**ANSWER:** To the extent Paragraph 48 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 48 of Plaintiff's First Amended Complaint as to Medtronic.

49. As a direct and proximate result of Plaintiff's use of the defective FiberCel units as manufactured, designed, sold, supplied, and distributed into the stream of commerce by Defendants, Plaintiff contracted TB, which has caused Plaintiff to suffer harm, damages, and economic loss, and Plaintiff will continue to suffer such harm into the foreseeable future.

**ANSWER:** To the extent Paragraph 49 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the

allegations contained in Paragraph 49 of Plaintiff's First Amended Complaint as to Medtronic.

## RESPONSE TO SECOND CAUSE OF ACTION – STRICT PRODUCTS LIABILITY – DESIGN DEFECT – AGAINST AZIYO, MEDTRONIC, AND DONOR SERVICES

50.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER:** Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

51.     At all times material to this lawsuit, Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing, and/or selling FiberCel for the sale to, and use by, members of the public.

**ANSWER:** To the extent the allegations in Paragraph 51 call for a legal conclusion, no response is required.  To the extent a response is required, Medtronic admits only that SGT, which is a wholly owned subsidiary of MSD, distributed FiberCel to certain customers in Florida and that Aziyo "drop shipped" any orders directly to those customers.  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 51 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

52.     Defendants manufactured, distributed, and/or sold the FiberCel product which was implanted into Plaintiff's body during her spinal surgery.

**ANSWER:** To the extent the allegations in Paragraph 52 call for a legal conclusion, no response is required. To the extent a response is required, Medtronic admits only that SGT, which is a wholly owned subsidiary of MSD, distributed FiberCel to certain customers in Florida and that Aziyo "drop shipped" any orders directly to those customers. Medtronic is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 52 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

53. The FiberCel manufactured by Defendants reached Plaintiff without substantial change in its condition when it was implanted into her spine during her operation.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 53 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

54. The FiberCel was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

**ANSWER:** To the extent Paragraph 54 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 54 of Plaintiff's First Amended Complaint as to Medtronic.

55.     Defendants owe a duty to the general public, specifically to Plaintiff, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing, and distribution of FiberCel. Defendants failed to exercise reasonable care in the design of FiberCel because, as designed, FiberCel was capable of causing serious personal injuries such as those suffered by Plaintiff during the foreseeable use of FiberCel.

**ANSWER:** The allegations contained in Paragraph 55 call for a legal conclusion to which no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 55 of Plaintiff's First Amended Complaint as to Medtronic.

56.     The FiberCel implanted into Plaintiff was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use. In addition, this product was dangerous to the extent beyond that which could reasonably be contemplated by Plaintiff.

**ANSWER:** To the extent Paragraph 56 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 56 of Plaintiff's First Amended Complaint as to Medtronic.

57.     The FiberCel implanted into Plaintiff was defective at the time it was distributed by the Defendants or left their control.

**ANSWER:** To the extent Paragraph 57 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 57 of Plaintiff's First Amended Complaint as to Medtronic.

58.     Plaintiff was a person who would reasonably be expected to use FiberCel.

**ANSWER:**  To the extent Paragraph 58 calls for a legal conclusion, no response is required.  To the extent a response is required, Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 58 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

59.     Defendants' failure to exercise reasonable care in the design, marketing, selling, distributing, and manufacturing of FiberCel was a proximate cause of Plaintiff's injuries and damages.

**ANSWER:** To the extent Paragraph 59 calls for a legal conclusion, no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 59 of Plaintiff's First Amended Complaint as to Medtronic.

60.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to FiberCel, and suffered the injuries and damages set forth hereinabove.

**ANSWER:**  To the extent Paragraph 60 calls for a legal conclusion, no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 60 of Plaintiff's First Amended Complaint as to Medtronic.

## Response to Third Cause of Action –
## Strict Products Liability – Failure to Warn –
## Against Aziyo, Medtronic, and Donor Services

61.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER:**   Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

62.     Defendants owed a duty of reasonable care to adequately warn of the risks associated with the use of FiberCel to foreseeable users, including Plaintiff.

**ANSWER:**   To the extent Paragraph 62 calls for a legal conclusion, no response is required.   To the extent a response is required, Medtronic denies the allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint as to Medtronic.

63.     Defendants knew or reasonably should have known that the warnings provided to users of FiberCel regarding the risks associated with its use were incorrect or inadequate in at least the following material respects:

a.   FiberCel was unaccompanied by proper warnings regarding all possible risks associated with its use and the comparative severity, incidence, and duration of adverse effects; and

b.   Defendants failed to include adequate warnings that would alert Plaintiff and Plaintiff's physicians to the dangerous risks of FiberCel, including, among other things, development of TB;

c.   Defendants failed to immediately warn patients and physicians after they learned that their product was contaminated with TB; and

d.   Otherwise failed to provide adequate warnings.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 63, including subparts (a) through (d), of Plaintiff's First Amended Complaint as to Medtronic.

64.     By failing to warn Plaintiff and Plaintiff's physicians of the adverse health risks associated with FiberCel, Plaintiffs breached their duty to Plaintiff of reasonable care and safety.

**ANSWER:** To the extent Paragraph 64 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 64 of Plaintiff's First Amended Complaint as to Medtronic.

65.     Defendants, as manufacturers and distributors of human tissue products, are held to the level of knowledge of an expert in the field; and further, Defendants knew, or should have known, that the warnings they distributed regarding the risks of a contaminated product causing TB and associated injuries and complications following the implantation of FiberCel were inadequate.

**ANSWER:** To the extent Paragraph 65 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 65 of Plaintiff's First Amended Complaint as to Medtronic.

66.     Plaintiff did not have the same expert knowledge as Defendants, and no adequate warning of other clinically relevant information and data was communicated to Plaintiff or Plaintiff's physicians.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 66 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

67. Defendants have a continued duty to provide consumers, including Plaintiff and Plaintiff's physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with FiberCel, as it came or could have become available to Defendants.

**ANSWER:** To the extent Paragraph 67 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 67 of Plaintiff's First Amended Complaint as to Medtronic.

68. Defendants marketed, promoted, distributed, and sold an unreasonably dangerous and defective human tissue product, FiberCel, to health care providers empowered to implant FiberCel into consumers, including Plaintiff, without adequate warnings and other clinically relevant information and data. Through both omission and affirmative misstatements, Defendants mislead the medical community about the risk and benefit balance of FiberCel, which resulted in severe injury to Plaintiff.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 68 of Plaintiff's First Amended Complaint as to Medtronic.

69. Defendants knew or should have known that consumers, including Plaintiff specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures.

**ANSWER:** To the extent Paragraph 69 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the

allegations contained in Paragraph 69 of Plaintiff's First Amended Complaint as to Medtronic.

70. Defendants had an obligation to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information, data, and warnings regarding the adverse health risks associated with the implantation of FiberCel.

**ANSWER:** To the extent Paragraph 70 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 70 of Plaintiff's First Amended Complaint as to Medtronic.

71. By failing to provide Plaintiff and Plaintiff's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with the implantation of FiberCel, Defendants breached their duty of reasonable care and safety.

**ANSWER:** To the extent Paragraph 71 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 71 of Plaintiff's First Amended Complaint as to Medtronic.

72. Defendants' actions described above were performed willfully, and with reckless disregard of the life and safety of the Plaintiff and the general public.

**ANSWER:** To the extent Paragraph 72 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the

allegations contained in Paragraph 72 of Plaintiff's First Amended Complaint as to Medtronic.

73.     Defendants' failure to provide adequate warnings was a proximate cause of Plaintiff's injuries and damages.

**ANSWER:**  To the extent Paragraph 73 calls for a legal conclusion, no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 73 of Plaintiff's First Amended Complaint as to Medtronic.

74.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiff was exposed to contaminated FiberCel and suffered the injuries and damages set forth herein above.

**ANSWER:** To the extent Paragraph 74 calls for a legal conclusion, no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 74 of Plaintiff's First Amended Complaint as to Medtronic.

## <u>RESPONSE TO FOURTH CAUSE OF ACTION –<br>NEGLIGENCE – AGAINST ALL DEFENDANTS</u>

75.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER:**  Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

76.    Defendants owed a duty to Plaintiff Deborah Rice to exercise reasonable care is designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality, assurance, quality control, and distribution of FiberCel into the stream of commerce, including a duty to assure that the FiberCel would not cause those who used it, including Deborah Rice, to suffer adverse harmful effects.

**ANSWER:**    The allegations contained in Paragraph 76 call for a legal conclusion to which no response is required.  To the extent a response is required, Medtronic denies the allegations contained in Paragraph 76 of Plaintiff's First Amended Complaint as to Medtronic.

77.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of FiberCel.

**ANSWER:**  Medtronic denies the allegations contained in Paragraph 77 of Plaintiff's First Amended Complaint as to Medtronic.

78.    Defendants knew or should have known that those individuals who used the defective FiberCel were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

**ANSWER:**  Medtronic denies the allegations contained in Paragraph 78 of Plaintiff's First Amended Complaint as to Medtronic.

79.    Defendants were negligent in designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and sale of FiberCel. The negligence of Defendants, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

a.    Designing manufacturing, producing, creating, and/or promoting FiberCel without adequately, sufficiently, or thoroughly testing the FiberCel

units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

b.     Not conducting a sufficient quality control testing program to determine whether or not the subject FiberCel was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

c.     Failing to adequately and properly obtain and review complete donor medical history;

d.     Negligently failing to timely recall their dangerous and defective FiberCel lots at the earliest date that it became known that certain lots of FiberCel were, in fact, dangerous and defective;

e.     Negligently manufacturing FiberCel in a manner that was dangerous to those individuals who had FiberCel transplanted into their bodies;

f.     Negligently producing FiberCel in a manner that was dangerous to those individuals who had it transplanted into their bodies;

g.     Negligently and carelessly harvesting an unqualified and inadequately screened human donor;

h.     Negligently failed to test the human donor tissue and/or bone;

i.     Failing to warn individuals who were using the product of the risks of contracting tuberculosis; and

j.     Were otherwise careless and negligent.


**ANSWER:** Medtronic denies the allegations contained in Paragraph 79, including subparts (a) through (j), of Plaintiff's First Amended Complaint as to Medtronic.

80.     Defendants knew or should have known that consumers, such as Plaintiff Deborah Rice, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 80 of Plaintiff's First Amended Complaint as to Medtronic.

81. Defendants' negligence was the proximate cause of Plaintiff Deborah Rice's physical, mental, emotional injuries and harm, and economic loss.

**ANSWER:** To the extent Paragraph 81 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 81 of Plaintiff's First Amended Complaint as to Medtronic.

82. By reason of the foregoing, Defendants are liable to Plaintiff for all of her injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future.

**ANSWER:** To the extent Paragraph 82 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 82 of Plaintiff's First Amended Complaint as to Medtronic.

## RESPONSE TO FIFTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY – AGAINST ALL DEFENDANTS

83. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

**ANSWER:** Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

84. Defendants are in the business of designing, manufacturing, testing, supplying, selling, and placing into the stream of commerce certain goods, including FiberCel.

**ANSWER:** Medtronic admits only that SGT distributes FiberCel, which Aziyo designs, manufactures, and "drop ships" directly to customers. Medtronic denies any remaining allegations contained in Paragraph 84 of Plaintiff's First Amended Complaint.

85. By placing FiberCel into the stream of commerce, Defendants impliedly warranted that it was merchantable and fit and safe for its intended use.

**ANSWER:** To the extent Paragraph 85 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 85 of Plaintiff's First Amended Complaint as to Medtronic.

86. The FiberCel placed into the stream of commerce by Defendants and implanted into Plaintiff was contaminated, leading those persons who received FiberCel implants to develop tuberculosis, including Plaintiff, and accordingly, was not fit, safe, or merchantable for its intended use.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 86 of Plaintiff's First Amended Complaint as to Medtronic.

87. The contamination in the FiberCel, manufactured, supplied, and placed into the stream of commerce by Defendants was present at the time the FiberCel units left Defendants' control and at the time it was implanted into Plaintiff as part of her spinal operation.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 87 of Plaintiff's First Amended Complaint as to Medtronic.

88. Defendants breached the implied warranty for FiberCel because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in

personal injuries suffered by Plaintiff Deborah Rice, including her development of tuberculosis.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 88 of Plaintiff's First Amended Complaint as to Medtronic.

89.     Plaintiff Deborah Rice was a foreseeable user of the FiberCel designed, manufactured, and placed into the stream of commerce by Defendants.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 89 of Plaintiff's First Amended Complaint as to Medtronic.

90.     By reason of the foregoing, Defendants are liable to Plaintiff Deborah Rice for her injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

**ANSWER:** To the extent Paragraph 90 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 90 of Plaintiff's First Amended Complaint as to Medtronic.

## RESPONSE TO SIXTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY

91.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

**ANSWER:** Medtronic incorporates by reference its responses to all paragraphs Plaintiff's First Amended Complaint.

92.     At all times mentioned, Defendants expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that FiberCel is safe, effective, fit, and

proper for its intended use. Plaintiff and Plaintiff's physicians utilized FiberCel relying upon these warranties.

**ANSWER:** Without admitting that Medtronic made any express representation to Plaintiff or Plaintiff's physicians, Medtronic admits that to the extent it had any communications about FiberCel, those communications were consistent with FiberCel's instructions for use. Medtronic denies the remaining allegations contained in Paragraph 92 of Plaintiff's First Amended Complaint as to Medtronic.

93.     Defendants' own promotion states that FiberCel is processed in sterile conditions, and is screened for bacteria and communicable disease.

**ANSWER:** Without admitting that Medtronic made any express representation to Plaintiff or Plainitff's physicians, Medtronic admits that to the extent it had any communications about FiberCel, those communications were consistent with FiberCel's instructions for use. Medtronic denies any remaining allegations contained in Paragraph 93 of Plaintiff's First Amended Complaint.

94.     In utilizing FiberCel, Plaintiff relied on the skill, judgment, representation, and foregoing express warranties of the Defendants. These warranties and representations were false in that FiberCel is unsafe and unfit for its intended uses.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 94 of Plaintiff's First Amended Complaint.

95.     As a result of the abovementioned breach of express warranties by Defendants, Plaintiff suffered injuries and damages as alleged herein.

**ANSWER:** To the extent paragraph 95 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 95 of Plaintiff's First Amended Complaint as to Medtronic.

## RESPONSE TO SEVENTH CAUSE OF ACTION – MEDICAL MONITORING

96. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

**ANSWER:** Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

97. As a result of the Defendants' negligence, Plaintiff has been diagnosed with TB, and may in the future experience ongoing symptoms of TB, in addition to other injuries and harm that she may suffer as a result of her TB diagnosis.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 97 of Plaintiff's First Amended Complaint regarding Plaintiff's diagnoses; therefore, Medtronic denies those allegations. Medtronic denies the allegations contained in Paragraph 97 of Plaintiff's First Amended Complaint as to Medtronic.

98. A monitoring procedure exists to monitor Plaintiff's TB since all TB patients require continual and ongoing monitoring of their potentially deadly disease.

**ANSWER:** Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 98 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

99.     Plaintiff will be required to undergo testing and analysis to monitor the spread and progression of her TB.

**ANSWER:**  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 99 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

100.     Ongoing TB testing requires expenditures of time and money.

**ANSWER:**  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 100 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

101.     The prescribed monitoring regime is different from that normally recommended for an individual like Plainiff in the absence of the development of TB.

**ANSWER:**  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 101 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

102.     The prescribed monitoring regime is reasonably necessary according to contemporary scientific and medical principles.

**ANSWER:**  Medtronic is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 102 of Plaintiff's First Amended Complaint; therefore, Medtronic denies those allegations.

103.     Defendants' acts were negligent and reckless, and they should be held accountable, and should compensate Plaintiff for the ongoing costs of monitoring her TB.

**ANSWER:** To the extent paragraph 103 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 103 of Plaintiff's First Amended Complaint as to Medtronic.

## RESPONSE TO PUNITIVE DAMAGES ALLEGATIONS

104. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

**ANSWER:** Medtronic incorporates by reference its responses to all paragraphs of Plaintiff's First Amended Complaint.

105. Plaintiff is further informed and believes that Defendants' misconduct, as previously outlined herein, constituted a conscious disregard for the rights and safety of other persons, including Plaintiff Deborah Rice, that had a great probability of causing substantial harm including, but not limited to, exposing Deborah Rice and other recipients of FiberCel to tuberculosis, a potentially deadly infectious disease.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 105 of Plaintiff's First Amended Complaint as to Medtronic.

106. Plaintiff is further informed and believes that Defendants engaged in conduct with respect to the contaminated FiberCel unit alleged herein which was a legal cause of loss, damages, injuries, and harm to Plaintiff, and which exposed Plaintiff and other recipients of the contaminated FiberCel units to serious complications, including the diagnosis of tuberculosis in Plaintiff's post-surgical wound.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 106 of Plaintiff's First Amended Complaint as to Medtronic.

107. Defendants' actions and inactions leading to the contamination of the FiberCel product were outrageous, willful and wanton, and done with reckless disregard for the safety of the Plaintiff.

**ANSWER:** Medtronic denies the allegations contained in Paragraph 107 of Plaintiff's First Amended Complaint as to Medtronic.

108.    The Defendants' outrageous, willful and wanton, and reckless conduct in disregard of the safety of the Plaintiff was the direct proximate cause of Plaintiff's injuries and damages.

**ANSWER:** To the extent paragraph 108 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 108 of Plaintiff's First Amended Complaint as to Medtronic.

109.    As a direct and proximate result of the Defendants' outrageous, willful and wanton, and reckless conduct in disregard of the safety of the Plaintiff, the Plaintiff has suffered and continues to suffer damages as set forth above.

**ANSWER:** To the extent paragraph 109 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 109 of Plaintiff's First Amended Complaint as to Medtronic.

110.    Defendants thereby acted with a conscious disregard for the rights and safety of Plaintiff Deborah Rice and other users of the contaminated FiberCel units, thus warranting an award of punitive damages to Plaintiff.

**ANSWER:** To the extent paragraph 110 calls for a legal conclusion, no response is required. To the extent a response is required, Medtronic denies the allegations contained in Paragraph 110 of Plaintiff's First Amended Complaint as to

Medtronic. Medtronic further denies that Plaintiff is entitled to any recovery or any form of relief whatsoever from Medtronic.

## RESPONSE TO REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

(a)    Compensatory damages exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all past, present, and future pain and suffering;

(b)    Special damages, exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all of her injuries and damages, both past and present;

(c)    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

(d)    An order to establish a medical monitoring protocol for Plaintiff to monitor her health;

(e)    Attorneys' fees, expenses, and costs of this action;

(f)    Pre-judgment and post-judgment interest in the maximum allowed by law; and

(g)    Such further relief as the jury deems just and appropriate.

**ANSWER:** Medtronic denies that it is liable to Plaintiff for her claims and denies that Plaintiff is entitled to any recovery or any form of relief whatsoever from

Medtronic. Medtronic denies any remaining allegations contained in this Paragraph as to Medtronic, including subparts (a) – (g).

## AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following defenses should be available to Medtronic in this matter. Medtronic accordingly preserves the right to assert those separate and affirmative defenses. Medtronic further reserves the right to amend this answer to assert additional defenses and other claims as discovery proceeds.

By alleging the matters set forth below, Medtronic does not admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters. If necessary and/or in the alternative, Medtronic raises the following defenses available in the State of Florida and any State or Commonwealth of the United States whose laws might be deemed controlling in this case, but reserves the right to amend its Answer to raise any additional defenses, which it may have against Plaintiff's claims.

## FIRST AFFIRMATIVE DEFENSE

The First Amended Complaint fails, in whole or in part, to state a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the injuries allegedly sustained by Plaintiff were not proximately caused by any act or omission of Medtronic.

## THIRD AFFIRMATIVE DEFENSE

The acts or omissions of Plaintiff were the sole proximate cause or a proximate contributing cause of the injuries and damages of which Plaintiff complains.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by Plaintiff's failure to assert and/or demonstrate a safer design for the product at issue.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the product at issue provided a benefit to users of such product and greatly outweighed any risk created by using the product, any risk could not have been avoided through the use of the highest standards of scientific and technical knowledge available at the time, the benefit provided to users could not be achieved in another manner with less risk, and adequate warnings concerning the risks were provided.

## SIXTH AFFIRMATIVE DEFENSE

The injuries and damages allegedly suffered in this action, which are denied, were not foreseeable given the state of scientific knowledge and state-of-the-art at the time of the alleged injuries. At all times relevant, the medical product at issue conformed to the generally recognized state-of-the-art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled, and complied with applicable codes, standards, regulations, or specifications

established, adopted, promulgated, or approved by the United States or by Florida, or by an agency of the United States or Florida, including those of the FDA and American Association of Tissue Banks® (AATB®). Medtronic is therefore entitled to a presumption that the product was not defective and that Medtronic was not negligent.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's causes of action predicated on a failure to warn theory are barred by the learned intermediary doctrine. Medtronic is not liable because the end user of the medical product at issue, Plaintiff's physician, was a sophisticated user of the product. Medtronic further owed no duty to warn of risks that were open, obvious, a matter of common knowledge, and/or known by or should have been known by Plaintiff's physician.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction. The FDA is charged under the law with determining the content of the labeling as defined by administrative regulations adopted pursuant to the FDCA for prescription medical products, and the FDA has adopted and issued interpretative regulations and guidance that govern said product labeling which the product manufacturer must provide to allow it to be sold in the

United States.  The product's warnings and labeling conformed with governmental requirements and were presumptively adequate.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, by lack of standing or capacity to bring such claims and/or the doctrines of estoppel, consent, waiver, informed consent, release, and or res judicata.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries and/or damages were caused by an unforeseen intervening and/or superseding cause for which Medtronic is not legally responsible and/or the unforeseeable misuse or improper use of the medical product.

## ELEVENTH AFFIRMATIVE DEFENSE

Any recovery by Plaintiff must be reduced or offset by all amounts paid, payable by, or available from collateral sources.  Medtronic is entitled to credit for any settlement of claims for alleged injuries and damages made by Plaintiff with any other defendant(s) or other person or entity subsequently joined to this action. Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has released, settled, entered into an accord and satisfaction, or otherwise compromised her claims by any means.

## TWELFTH AFFIRMATIVE DEFENSE

As to Plaintiff or to any other entity or person whose conduct or intervening negligence resulted in the alleged injuries and/or damages of Plaintiff, if any, Medtronic expressly pleads the doctrines of contributory negligence, comparative fault and/or comparative negligence, as well as the provisions of any applicable comparative fault and/or comparative negligence and/or contributory negligence state statute or law including Florida's Comparative Negligence Statute. Plaintiff's recovery, if any, must be reduced in proportion to the amount of fault attributed to Plaintiff, pursuant to § 768.81, Fla. Stat. Ann.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged injuries, losses, or damages were caused by the acts or omissions of third parties for which Medtronic has no legal responsibility. Medtronic denies that any third party engaging in the acts alleged by Plaintiff was acting as Medtronic's agent or servant, at the instruction of Medtronic, or within its control. Therefore, Plaintiff's claims, to the extent they seek to recover for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Medtronic hereby gives notice that it intends to rely upon and incorporate by reference any defenses that may be asserted by any co-defendant in this lawsuit.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff has not pled her claims with sufficient particularity as required by Fed. R. Civ. P. 8.

## SIXTEENTH AFFIRMATIVE DEFENSE

There is no proximate causation between any alleged action, omission, breach, or failure on the part of Medtronic and the alleged damages of Plaintiff and no act or omission of Medtronic caused or contributed to the injuries alleged in this case.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Medtronic breached no duty owed to Plaintiff, if any duty existed, which it did not.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Any medical product alleged to be at issue in this litigation conformed to its specifications and performance standards and posed no unreasonable risk or danger.

## NINTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be preempted, in whole or in part, by applicable law, including the pervasive regulation of medical products.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims for breach of warranty are barred because Plaintiff failed to give a timely notice of any alleged breach of warranty.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

To the extent Plaintiff has settled or will in the future settle with any person or entity with respect to the injuries asserted in the First Amended Complaint, Medtronic's liability, if any, should be precluded or reduced accordingly.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks recovery of punitive or exemplary damages against Medtronic, unless Medtronic's liability for punitive damages and the appropriate amount of punitive damages is required to be established by clear and convincing evidence, any award of punitive damages would violate Medtronic's constitutional rights, including but not limited to those under the due process clauses in the Fifth and Fourteenth Amendments to the United States Constitution and any applicable state constitution, and would be improper under the common law, public policies, applicable statutes, and court rules of the applicable states to these amendments and the excessive fines clause in the Eighth Amendment to the Constitution of the United States and double jeopardy clause in the Fifth Amendment to the Constitution of the United States.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks recovery of punitive or exemplary damages against Medtronic, any such claim of Plaintiff for punitive damages against Medtronic cannot be maintained because there was no act or omission by Medtronic

that was particularly reprehensible, reckless, or motivated by malice or fraud. Medtronic had no knowledge of any alleged injury-causing effect of the product at issue and therefore did not distribute the product with such knowledge. Additionally, any award of punitive damages under the applicable law would be unlawful and unauthorized, and would be void for vagueness, both facially and as applied, as a result of, among other deficiencies, the absence of adequate notice of what conduct is subject to punishment; the absence of adequate notice of what punishment may be imposed; and the absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount of punitive damages that a jury may impose, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the applicable state constitution, and the common law and public policies of that state.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover attorneys' fees under any applicable law.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Medtronic did not market to Plaintiff nor did Medtronic breach any express or implied warranties and/or breach any warranties created by law.

## TWENTY-SIXTH DEFENSE

Medtronic denies that Plaintiff or Plaintiff's Physicians relied on any warranties alleged in the First Amended Complaint.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff has filed bankruptcy during the relevant time period of the events alleged in the First Amended Complaint or files for bankruptcy at some point in the future, the claims of Plaintiff may be "property of the bankruptcy estate" which should be prosecuted by the bankruptcy trustee rather than Plaintiff, or, if not disclosed by Plaintiff on the schedules and/or statement of financial affairs, may be barred by the doctrine of judicial estoppel.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Medtronic are barred, in whole or in part, by Section 402 of The Restatement (Second) of Torts and Sections 2, 4, and 6 of the Restatement (Third) of Torts.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims for implied warranty of fitness are barred in whole or in part by Plaintiff's failure to assert and/or demonstrate a special purpose for the product at issue.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims against Medtronic are barred in whole or in part by Plaintiff's failure to assert and/or demonstrate that Medtronic knew or should have known of an alleged danger in the product at issue.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

If a duty to warn is found to have existed, then Medtronic asserts that it provided all required warnings regarding the product at issue to entities to whom Medtronic sold the product and to entities who used the product. If Plaintiff did not receive these warnings, it was because the product was supplied in bulk and/or the entities to whom Medtronic sold the product or the party(ies) who used the product did not, through their own acts or omissions, pass the product warnings along to Plaintiff, without fault of Medtronic.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

To the extent Plaintiff's claims are based on a theory providing for liability without proof of causation, the claims violate Medtronic's rights under the United States Constitution.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred by failure to join an indispensable party or real party in interest necessary for the just adjudication of this matter.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Medtronic asserts any and all defenses, claims, credits, offsets, or remedies available under the Restatement (Third) of Torts or other applicable law as determined by the Court and reserves the right to amend this Answer to file such

further pleadings as are necessary to preserve and assert such defenses, claims, credits, offsets, or remedies.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Medtronic specifically pleads all affirmative defenses under the Uniform Commercial Code ("UCC") now existing or which may arise in the future, including those defenses provided by UCC § 2-607 or other applicable law as determined by the Court.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

If an express warranty is found to have been made by Medtronic – which Medtronic expressly denies – then Medtronic asserts that it fulfilled any representations in such warranty.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff improperly pleads a request for punitive damages as an independent claim. Punitive damages may be awarded only upon a finding of liability to Plaintiff. *See Philip Morris USA, Inc. v. Hallgren*, 124 So. 3d 350, 355 (Fla. 2d DCA 2013). Accordingly, Plaintiff's request for punitive damages must be dismissed.


The following Affirmative Defenses 38 through 47 are specifically reserved by Medtronic to the extent that further investigation, discovery, or fact-finding elicits facts supportive of their application.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

After consulting with Plaintiff's treating and prescribing physician regarding the appropriate treatment for her medical condition, Plaintiff voluntarily undertook, accepted, and assumed the risks associated with the use of the product for the treatment of Plaintiff's medical condition, and thus the assumption of the risk and incurred risk doctrines bar in whole or in part the damages that Plaintiff seeks to recover.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, are barred in whole or in part by Plaintiff's failure to mitigate such damages.

## FORTIETH AFFIRMATIVE DEFENSE

The claims of Plaintiff may be barred, in whole or in part, from recovery, due to spoliation of evidence and the failure to properly preserve evidence necessary to the determination of the claim.

## FORTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's damages may have been caused by misuse, mishandling, abuse, neglect, negligent care, negligent maintenance, modification, alteration, or negligent repair of the product by physicians, surgeons, or others outside of Medtronic's authority or control, thereby barring or reducing any recovery by Plaintiff.

## FORTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's damages may have been caused by Plaintiff and/or Plaintiff's physician's failure to follow the adequate warnings and instructions supplied with the product, thereby barring or reducing any recovery by Plaintiff.

## FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's damages are barred under Florida law to the extent the condition alleged to have caused Plaintiff's injury was open, obvious, and known to Plaintiff.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the product at issue was neither defective nor unreasonably dangerous in its design, manufacture, distribution, or marketing, and was reasonably safe and reasonably fit for its intended use.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

If Plaintiff sustained the injuries or incurred the expenses alleged, she may have been caused, in whole or in part, by operation of nature or by an act of God and/or occurred by operation of nature or as a result of circumstances over which Medtronic had, and continue to have, no control.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, because any injuries and damages allegedly sustained by Plaintiff was the result of pre-existing or subsequent conditions that are:  unrelated to the use of the product at issue; idiosyncratic

reactions; or other intervening or superseding acts or omissions of persons other than Medtronic.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

Medtronic reserves the right to assert any additional defenses and matters in avoidance, which may be disclosed during the course of additional investigation and discovery.

## JURY DEMAND

Medtronic Defendants pray for trial by jury by twelve (12) in this matter.

**WHEREFORE**, Medtronic denies any and all liability to Plaintiff, and demands that judgment be entered in Medtronic's favor, together with an award of costs and fees associated with the defense of this action.

Dated: December 10, 2021                    Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Ardith Bronson*
Ardith Bronson (FBN 423025)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131
Telephone: (305) 423-8562
Facsimile: (305) 503-9583
ardith.bronson@ dlapiper.com


*Attorneys for Defendants Medtronic*
*Sofamor Danek USA, Inc. and*
*Spinalgraft Technologies, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December 2021, I caused to be served a true and correct copy of the foregoing upon all counsel of record via the Court's electronic notification systems.

*/s/ Ardith Bronson*
Ardith Bronson, Esq.